UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
CIVIL CASE NO. 3:23-cv-00458

| AUSTIN DEVON PETTIS, | ) | |
|---|---|---|
| | ) | |
| Plaintiff, | ) | |
| | ) | **MEMORANDUM OF** |
| vs. | ) | **DECISION AND ORDER** |
| | ) | |
| | ) | |
| FNU JONES, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

**THIS MATTER** comes before the Court on Defendants' Motion for Summary Judgment [Doc. 21] and the Counterclaims by Defendants Peterson, Jones, Simpson, and Smith [Doc. 11].

**I.    PROCEDURAL BACKGROUND**

On or about July 25, 2023, pro se Plaintiff Austin Devon Pettis ("Plaintiff") filed this action pursuant to 42 U.S.C. § 1983 through an unverified Complaint, alleging the violation of his civil rights by Defendants Dejuan Jones, Jail Sergeant; Devonte Peterson, Tactical Response Unit (TRU) Team Officer; Tonya Smith, Deputy Sheriff; Robert Simpson, TRU Team Officer; and Gary McFadden, Sheriff; while Plaintiff was detained at the Mecklenburg County Jail (the "Jail") in Charlotte, North Carolina. [Doc. 1]. Plaintiff sued Defendants in their individual and official capacities. [Id. at 2-4]. Plaintiff's Fourteenth Amendment individual capacity claims against Defendant Jones based on his alleged use of excessive force and against Defendants Smith, Peterson, and Simpson based on their alleged failure to protect Plaintiff from harm passed initial review. The Court also allowed Plaintiff's Fourteenth Amendment official capacity claim against Defendant McFadden based on an alleged Sheriff's Office policy condoning violence against detainees to pass initial review. [Doc. 9]. Defendants Jones, Peterson, Simpson, and Smith filed

counterclaims against Plaintiff for assault.[1] [Doc. 11].

On August 21, 2024, Defendants moved for summary judgment. [Doc. 21]. Defendants argue that summary judgment should be granted because the force used by Defendant Jones was reasonable; Defendants Peterson, Simpson, and Smith did not fail to protect the Plaintiff; and Plaintiff cannot demonstrate that a policy or custom caused the alleged violation of his rights. [Doc. 22 at 2]. Defendants also argue that they are entitled to qualified immunity. [Id. at 12-16, 18-21]. In support of their summary judgment motion, Defendants submitted a brief; the Declaration of Defendant Jones; and excerpts from Plaintiff's deposition in this matter. [Docs. 22, 22-2 through 22-4].

On August 27, 2024, the Court entered an order in accordance with Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), advising Plaintiff of the requirements for filing a response to the summary judgment motion and of the manner in which evidence could be submitted to the Court. [Doc. 23]. The Plaintiff was specifically advised that he "may not rely upon mere allegations or denials of allegations in his pleadings to defeat a summary judgment motion." [Id. at 2]. Rather, he must support his assertion that a fact is genuinely disputed by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." [Id. (citing Fed. R. Civ. P. 56(c)(1)(a))]. The Court further advised that:

> An affidavit is a written statement under oath; that is, a statement prepared in writing and sworn before a notary public. An unsworn statement, made and signed under the penalty of perjury, may also be submitted. Affidavits or statements must be presented by Plaintiff to this Court no later than fourteen (14) days from the date

---

[1] Plaintiff never answered these counterclaims, and Defendants did not move for entry of default. Defendants stipulate to the dismissal of their counterclaims if the Court grants their summary judgment motion. [Doc. 22 at 2].

2

of this Order and must be filed in duplicate.

[Id. at 3 (citing Fed. R. Civ. P. 56(c)(4))]. The Court allowed Plaintiff until September 17, 2024 to file his response. [Id. at 3]. The Court admonished Plaintiff that the "failure to file a timely and persuasive response will likely lead to the dismissal of this lawsuit against Defendants." [Id.]. Then, on September 17, 2024, the Court granted Plaintiff's motion for additional time to respond to Defendants' summary judgment motion, allowing him until October 11, 2024 to respond. [Doc. 25; 9/17/2024 Text Order].

Plaintiff, however, has not responded to Defendants' summary judgment motion and the extended deadline to do so has expired. Also, as noted, Plaintiff's Complaint was not verified or otherwise submitted under penalty of perjury and, therefore, cannot be considered for its evidentiary value here. See Goodman v. Diggs, 986 F.3d 493, 498-99 (4th Cir. 2021) (holding that a district court is to consider verified prisoner complaints as affidavits on summary judgment "when the allegations contained therein are based on personal knowledge"). As such, Plaintiff's only forecast of evidence before the Court is his deposition testimony, which was offered by Defendants.

## II. STANDARD OF REVIEW

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is material only if it might affect the outcome of the suit under governing law. Id.

The movant has the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories,

and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (internal citations omitted).

Once this initial burden is met, the burden shifts to the nonmoving party. The nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." Id. at 322 n. 3. The nonmoving party may not rely upon mere allegations or denials of allegations in his pleadings to defeat a motion for summary judgment. Id. at 324. Rather, the nonmoving party must oppose a proper summary judgment motion with citation to "depositions, documents, electronically stored information, affidavits or declarations, stipulations …, admissions, interrogatory answers, or other materials" in the record. See id.; Fed. R. Civ. P. 56(c)(1)(a). Courts "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." Eastern Shore Mkt. Inc. v. J.D. Assoc.'s, LLP, 213 F.3d 174, 180 (4th Cir. 2000). The nonmoving party must present sufficient evidence from which "a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248; accord Sylvia Dev. Corp. v. Calvert County, Md., 48 F.3d 810, 818 (4th Cir. 1995).

When ruling on a summary judgment motion, a court must view the evidence and any inferences from the evidence in the light most favorable to the nonmoving party. Anderson, 477 U.S. at 255. Facts, however, "must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." Scott v. Harris, 550 U.S. 372, 380, 127 S.Ct. 1769, 1776 (2007).

### III.  FACTUAL BACKGROUND

The forecast of evidence, taken in the light most favorable to the Plaintiff as the non-moving party shows the following.

4

On September 20, 2022, Plaintiff was detained at the Jail and assigned to Pod 3900. [Doc. 22-3 at 2: Pettis Dep.]. That day, while Plaintiff was talking to someone outside of the stalls in the shower area, showing this individual something on his tablet, Plaintiff's pod supervisor, Officer Langford, approached Plaintiff and "said something." [Doc. 22-3 at 3-4]. Plaintiff "was in [his] feelings about [his] charges and the time that [he was] facing" and asked Officer Langford to "please leave [him] alone." [Doc. 22-3 at 4]. The situation "escalated from there" and Plaintiff "had a disturbance" with Officer Langford. [Doc. 22-3 at 2, 4].

In response to this disturbance, Officer Langford made an "all available escorts" call on her radio. [Doc. 22-3 at 5]. This call is used when a Jail resident is either fighting or acting aggressively and needs to be removed from the pod. [Doc. 22-4 at ¶ 3: Jones Dec.; see Doc. 22-3 at 5-6]. Defendant Jones was assigned as the fifth and sixth floor sergeant at the Jail that day. [Id. at ¶ 2]. At approximately 2:17 p.m., Defendant Jones heard Officer Langford's "all available escorts" call on his radio and made his way to the pod. [Id. at ¶¶ 3-4]. Officer Williams entered the pod first, and asked Plaintiff, "What's going on?" [Doc. 22-3 at 6]. Plaintiff walked past him, saying "Man, let's go in the hallway and talk." As Plaintiff walked past Officer Williams, Defendants Simpson and Peterson entered the pod. At that time, Defendant Simpson "just tried to put his hands on [Plaintiff] and "force[d] [Plaintiff's] hands behind [his] back to put the handcuffs on [him]." [Id.]. Plaintiff responded, "Whoa, man, like, you're doing too much, You don't have to be doing all this. You're being too aggressive." [Id. at 6-7]. "[T]hey took it as a struggle," and Defendant Peterson "jumped in, and they "grabbed" Plaintiff and handcuffed him behind his back. [Id. at 7]. Plaintiff is "not too kind if somebody [is] just putting their hands on [him] for no reason, so [he] got to struggling with them, and they had to remove [him] from the pod." [Id. at 8]. Defendants Simpson, Jones, and Peterson were unable to lift Plaintiff off the ground, so Defendant

Jones grabbed Plaintiff's ankles and these Defendants carried Plaintiff out of the pod. [Id.].

From the pod, they walked out of a slider door and went inside the sally port, where Defendants Simpson, Jones, and Peterson "just dropped [Plaintiff] to the ground on [his] face" and "busted [his] lip." [Id. at 10-11]. At this time, Defendant Peterson had been carrying "the brute force of [Plaintiff's] weight." [Id. at 11]. "They picked [Plaintiff] up off the ground," and these Defendants and the Plaintiff were talking and "started walking towards the elevator." [Id. at 13-14].

From the sally port to the elevator, Defendant Peterson was "getting on [Plaintiff's] nerves," making "slick comments," "talking trash." [Id. at 12-14]. Once they got on the elevator, Plaintiff "was just thinking in [his] head about what Peterson was saying. It was just getting under [Plaintiff's] skin." [Id. at 13]. They rode the elevator one or two floors. [Id. at 15]. As the elevator doors opened, Plaintiff spat on Defendant Peterson's face. [Id. at 15-16]. After Plaintiff spat on Defendant Peterson's face, Defendant Jones threw Plaintiff to the ground and "maliciously started attacking" the Plaintiff while he was handcuffed behind his back. [Id. at 16]. Defendant Jones punched Plaintiff in the face a couple of times and then Plaintiff "balled up on the ground to try to evade his punches." Jones then punched Plaintiff in the body and in the back of the head, "just punching [Plaintiff] continuously" for approximately 25 seconds.[2] [Id. at 16-19]. Eventually,

---

[2] Defendant Jones' testimony materially differs from Plaintiff's version of events. Defendant Jones attests that, while in the elevator, Plaintiff was informed that he was going to single cell confinement due to his behavior in the pod. Plaintiff began to threaten Defendants Jones, Peterson, and Simpson. Plaintiff threatened to kill Defendant Jones, saying "You don't know who I am." [Doc. 22-4 at ¶ 10]. Plaintiff became more hostile and erratic on the elevator. When they reached the fourth floor and the elevator opened, Plaintiff spat on Defendant Peterson's face and the spit also hit Jones on the side of his face. To avoid further assault by the Plaintiff, Defendant Jones took Plaintiff to the ground to gain compliance. [Id. at ¶¶ 11-12]. Defendants Simpson, Peterson, and Jones ordered Plaintiff to turn over onto his back. Because Plaintiff began to kick and continued to resist, Defendant Jones "struck him several times with a closed fist to gain compliance." [Id. at ¶ 13]. Once Plaintiff was no longer resisting, he was brought to his feet and escorted to medical. [Id.].

Defendant Simpson said, "He had enough. That's enough," and pulled Jones off the Plaintiff. [Id. at 17]. Because Defendant Jones was trying to break free of Defendant Simpson, Defendant Smith, who was present when the elevator door opened, stepped between Defendant Jones and the Plaintiff, and pushed Jones further down the hallway. [Id.]. Defendant Peterson "just stood there, watching." [Id. at 18]. After the incident, Plaintiff was seen by medical. The nurse reported that Plaintiff "ha[d] swelling to right side of the head," but that "no distress" was noted. [Id. at 20]. Plaintiff also had two black eyes. [Id.]. Plaintiff was given an ice pack for swelling, but he received no further medical treatment for his injuries. [Id. at 21-22]. Plaintiff, however, did see a "mental health nurse after the fact for mental anguish." [Id. at 22].

IV. DISCUSSION

A plaintiff's failure to respond to a summary judgment motion may constitute waiver or abandonment of a claim. Estate of Edgerton v. UPI Holdings, Inc., No. CCB-09-1825, 2011 WL 6837560, at *4 (D. Md. Dec. 28, 2011) (citing Mentch v. Eastern Sav. Bank, FSB, 949 F.Supp. 1236, 1246-47 (D. Md. 1997)). The Court will grant Defendants' motion for summary judgment. The Court finds that the Plaintiff has abandoned his claims by failing to respond to Defendants' motion for summary judgment, even after the Court grant Plaintiff an extension to do so. Moreover, the Court expressly warned Plaintiff that his failure to timely respond to the Defendants' motion may result in the dismissal of this action with prejudice.

The Court notes that it would grant summary judgment for Defendant McFadden in any event, but not for Defendants Jones, Smith, Simpson, or Peterson. The Fourteenth Amendment "protects a pretrial detainee from the use of excessive force that amounts to punishment." Graham v. Connor, 490 U.S. 386, 395 n.10 (1989). To state an excessive force claim, a pretrial detainee must show only that the force "purposely or knowingly used against him was objectively

7

unreasonable." Kingsley v. Hendrickson, 576 U.S. 389 (2015). The standard for assessing a pretrial detainee's excessive force claim is "solely an objective one." Id. In determining whether the force was objectively unreasonable, a court considers the evidence "from the perspective of a reasonable officer on the scene, including what the officer knew at the time, not with the 20/20 vision of hindsight." Id. (citing Graham, 490 U.S. at 396). Here, a reasonable juror may conclude from the forecast of evidence that Defendant Jones' conduct was unobjectively unreasonable and, therefore, violated the Fourteenth Amendment.

A pretrial detainee's failure to protect claim constitutes a due process claim under the Fourteenth Amendment. Farmer v. Brennan, 511 U.S. 825 (1994); Brown v. Harris, 240 F.3d 383, 388-90 (4th Cir. 2001) (applying Farmer to a pretrial detainee's failure to protect and medical claims). A pretrial detainee states a Fourteenth Amendment claim for deliberate indifference to a serious risk of harm on the "purely objective basis that the 'governmental action' they challenge is not 'rationally related to a legitimate governmental purpose' or is 'excessive in relation to that purpose.'" Short v. Hartman, 87 F.4th 593, 611 (4th Cir. 2023) (quoting Kingsley v. Hendrickson, 576 U.S. 389, 398 (2015)). "Now, it is sufficient that the plaintiff show that the defendant's action or inaction was in Kingsley's words, 'objectively unreasonable,' …. [T]hat is, the plaintiff must show that the defendant should have known of that condition and that risk, and acted accordingly." Id. at 611 (internal citation omitted); see Hammock v. Andoh, No. 22-7159, 2024 WL 33694, at *1 (4th Cir. Jan. 3, 2024) (In Short, the Fourth Circuit "held that a pretrial detainee's failure-to-protect claim must be evaluated under an entirely objective standard.").

Based on this standard, a reasonable juror might conclude from the forecast of evidence in the light most favorable to the Plaintiff that Defendants Smith, Peterson, and Simpson failed to protect Plaintiff from harm in violation of the Fourteenth Amendment. That is, the forecast of

evidence shows that Defendant Jones repeatedly punched Plaintiff all over his body for approximately 25 seconds before Defendant Simpson told Jones that Plaintiff had "had enough," that Defendant Smith intervened only after Defendant Simpson pulled Jones off the Plaintiff, and that Defendant Peterson merely stood by and watched. A reasonable juror might conclude that such inaction by one or more of these Defendants was objectively unreasonable in light of the alleged risk of harm that played out before their eyes. As such, the Court would not grant summary judgment for these Defendants.

Moreover, although at the time of Defendant Jones' use of force the standard may have been subjective, see Moss v. Harwood, 19 F.4th 614, n.4 (4th Cir. 2021), there seems little question from the forecast of evidence here that Defendants Smith, Peterson, and Simpson were aware of the alleged risk of harm to Plaintiff because such forecast shows that they watched Defendant Jones repeatedly punch Plaintiff for approximately 25 seconds before Defendant Simpson intervened. While they may have been unable to protect Plaintiff from the initial blows, the constitutional right of Plaintiff to be protected from further harm by Defendant Jones where Defendants Smith, Peterson, and Simpson had actual knowledge of the harm was clearly established. As such, the Court could not find that qualified immunity applies. See E.W. ex rel. T.W. v. Dolgos, 884 F.3d 172, 178 (4th Cir. 2018).

The Court, however, would dismiss the claim against Defendant McFadden because there is no forecast of evidence from which a reasonable juror could conclude that any Defendant acted pursuant to any formal or informal policy condoning the use of excessive force against detainees at the Jail.

9

Case 3:23-cv-00458-MOC    Document 27    Filed 11/18/24    Page 9 of 10

In sum, because Plaintiff failed to respond to Defendants' summary judgment motion and, therefore, abandoned his claims, the Court will grant Defendants' motion for summary judgment and dismiss the counterclaims by Defendants Smith, Peterson, Jones, and Simpson.

## O R D E R

**IT IS, THEREFORE, ORDERED** that the Defendants' Motion for Summary Judgment [Doc. 21] is **GRANTED**; the Counterclaims by Defendants Peterson, Jones, Simpson, and Smith [Doc. 11] are **DISMISSED**; and this action is hereby **DISMISSED with prejudice**.

The Clerk is instructed to terminate this action.

**IT IS SO ORDERED**.

Signed: November 18, 2024

Max O. Cogburn Jr.
United States District Judge