UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CARLOTTE DIVISION
CIVIL CASE NO. 3:23-cv-00458-MOC

| | | |
|---|---|---|
| AUSTIN DEVON PETTIS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | **MEMORANDUM OF** |
| vs. | ) | **DECISION AND ORDER** |
| | ) | |
| | ) | |
| FNU JONES, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**THIS MATTER** comes before the Court on Defendants' Motion for Summary Judgment. [Doc. 21].

**I.    PROCEDURAL BACKGROUND**

On or about July 25, 2023, pro se Plaintiff Austin Devon Pettis ("Plaintiff") filed this action pursuant to 42 U.S.C. § 1983 through an unverified Complaint, alleging the violation of his civil rights by Defendants Dejuan Jones, Jail Sergeant; Devonte Peterson, Tactical Response Unit (TRU) Team Officer; Tonya Smith, Deputy Sheriff; Robert Simpson, TRU Team Officer; and Gary McFadden, Sheriff; while Plaintiff was detained at the Mecklenburg County Jail (the "Jail") in Charlotte, North Carolina. [Doc. 1]. Plaintiff sued Defendants in their individual and official capacities. [Id. at 2-4]. Plaintiff's Fourteenth Amendment individual capacity claims against Defendant Jones based on his alleged use of excessive force and against Defendants Smith, Peterson, and Simpson based on their alleged failure to protect Plaintiff from harm passed initial review. The Court also allowed Plaintiff's Fourteenth Amendment official capacity claim against Defendant McFadden based on an alleged Sheriff's Office policy condoning violence against detainees to pass initial review. [Doc. 9]. Defendants Jones, Peterson, Simpson, and Smith filed

counterclaims against Plaintiff for assault.[1] [Doc. 11].

On August 21, 2024, Defendants moved for summary judgment. [Doc. 21]. Defendants argue that summary judgment should be granted because the force used by Defendant Jones was reasonable; Defendants Peterson, Simpson, and Smith did not fail to protect the Plaintiff; and Plaintiff cannot demonstrate that a policy or custom caused the alleged violation of his rights. [Doc. 22 at 2]. Defendants also argue that they are entitled to qualified immunity. [Id. at 12-16, 18-21]. In support of their summary judgment motion, Defendants submitted a brief; the Declaration of Defendant Jones; and excerpts from Plaintiff's deposition in this matter. [Docs. 22, 22-2 through 22-4].

On August 27, 2024, the Court entered an order in accordance with Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), advising Plaintiff of the requirements for filing a response to the summary judgment motion and of the manner in which evidence could be submitted to the Court. [Doc. 23]. Plaintiff did not timely file a response to Defendants' motion. Because it appeared that Plaintiff had abandoned his claims, the Court granted Defendants' summary judgment motion. [Doc. 27]. The Court noted, however, that, had Plaintiff responded, it would have denied summary judgment for Defendants Jones, Peterson, Simpson, and Smith based on the forecast of evidence before it. [Id. at 7-9]. The next day, counsel for Defendants contacted the Court, advising that Plaintiff had served his summary judgment response on Defendants. Because the response was timely had it been submitted to the Court and in the interests of justice, the Court ordered that it be docketed and that its Order granting summary judgment be vacated. [Doc. 31]. In opposition to Defendants' motion, Plaintiff submitted his own Declaration, a Statement of Disputed Factual Issues, a Brief, a Use of Force Report, which included several witness statements, and an excerpt

---

[1] Plaintiff never answered these counterclaims, and Defendants did not move for entry of default.

from a Detention Officer Certification Course primer.[2] [Doc. 32]. Defendants notified the Court that they would not file a reply. [Doc. 34].

The Court now considers Defendants' motion for summary judgment anew with the benefit of Plaintiff's response.[3]

## II. STANDARD OF REVIEW

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is material only if it might affect the outcome of the suit under governing law. Id.

The movant has the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (internal citations omitted).

Once this initial burden is met, the burden shifts to the nonmoving party. The nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." Id. at 322 n. 3. The nonmoving party may not rely upon mere allegations or denials of allegations in his pleadings to defeat a motion for summary judgment. Id. at 324. Rather, the nonmoving party must oppose

---

[2] Plaintiff also purports to include video footage of the incident as an exhibit to his response, but he did not submit the footage to the Court. [See Doc. 32 at 20-21]. Rather, Plaintiff notes that it is in his possession. [Id.]. Because the Court cannot consider evidence not before it, the video footage of the incident is not part of the forecast of evidence here.

[3] Although the Plaintiff appealed the Court's initial grant of summary judgment for Defendants [Doc. 29], the Plaintiff has voluntarily dismissed his appeal [USCA4 No. 24-7163, Docs. 20-21] and this Court again has jurisdiction over this action.

3

a proper summary judgment motion with citation to "depositions, documents, electronically stored information, affidavits or declarations, stipulations …, admissions, interrogatory answers, or other materials" in the record.  See id.; Fed. R. Civ. P. 56(c)(1)(a).  Courts "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." Eastern Shore Mkt. Inc. v. J.D. Assoc.'s, LLP, 213 F.3d 174, 180 (4th Cir. 2000).  The nonmoving party must present sufficient evidence from which "a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248; accord Sylvia Dev. Corp. v. Calvert County, Md., 48 F.3d 810, 818 (4th Cir. 1995).

When ruling on a summary judgment motion, a court must view the evidence and any inferences from the evidence in the light most favorable to the nonmoving party.  Anderson, 477 U.S. at 255.  Facts, however, "must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." Scott v. Harris, 550 U.S. 372, 380, 127 S.Ct. 1769, 1776 (2007).

### III. FACTUAL BACKGROUND

The forecast of evidence, taken in the light most favorable to the Plaintiff as the non-moving party shows the following.

On September 20, 2022, Plaintiff was detained at the Jail and assigned to Pod 3900.  [Doc. 22-3 at 2: Pettis Dep.].  That day, while Plaintiff was talking to someone outside of the stalls in the shower area, showing this individual something on his tablet, Plaintiff's pod supervisor, Officer Langford, approached Plaintiff and "said something." [Id. at 3-4].  Plaintiff "was in [his] feelings about [his] charges and the time that [he was] facing" and asked Officer Langford to "please leave [him] alone." [Id. at 4].  The situation "escalated from there" and Plaintiff "had a disturbance" with Officer Langford.  [Id. at 2, 4].

4

In response to this disturbance, Officer Langford made an "all available escorts" call on her radio. [Doc. 22-3 at 5]. This call is used when a Jail resident is either fighting or acting aggressively and needs to be removed from the pod. [Doc. 22-4 at ¶ 3: Jones Dec.; see Doc. 22-3 at 5-6]. Defendant Jones was assigned as the fifth and sixth floor sergeant at the Jail that day. [Id. at ¶ 2]. At approximately 2:17 p.m., Defendant Jones heard Officer Langford's "all available escorts" call on his radio and made his way to the pod. [Id. at ¶¶ 3-4]. Officer Williams entered the pod first, and asked Plaintiff, "What's going on?" [Doc. 22-3 at 6]. Plaintiff walked past him, saying "Man, let's go in the hallway and talk." As Plaintiff walked past Officer Williams, Defendants Simpson and Peterson entered the pod. At that time, Defendant Simpson "just tried to put his hands on [Plaintiff] and "force[d] [Plaintiff's] hands behind [his] back to put the handcuffs on [him]." [Id.]. Plaintiff responded, "Whoa, man, like, you're doing too much, You don't have to be doing all this. You're being too aggressive." [Id. at 6-7]. "[T]hey took it as a struggle," and Defendant Peterson "jumped in, and they "grabbed" Plaintiff and handcuffed him behind his back. [Id. at 7]. Plaintiff is "not too kind if somebody [is] just putting their hands on [him] for no reason, so [he] got to struggling with them, and they had to remove [him] from the pod." [Id. at 8]. Defendants Simpson, Jones, and Peterson were unable to lift Plaintiff off the ground, so Defendant Jones grabbed Plaintiff's ankles and these Defendants carried Plaintiff out of the pod. [Id.].

From the pod, they walked out of a slider door and went inside the sally port, where Defendants Simpson, Jones, and Peterson "just dropped [Plaintiff] to the ground on [his] face" and "busted [his] lip." [Id. at 10-11]. At this time, Defendant Peterson had been carrying "the brute force of [Plaintiff's] weight." [Id. at 11]. "They picked [Plaintiff] up off the ground," and at that time Defendants Simpson, Jones, and Peterson and the Plaintiff were "talking and talking" and "started walking towards the elevator." [Id. at 13-14].

5

From the sally port to the elevator, Defendant Peterson was "getting on [Plaintiff's] nerves," making "slick comments," "talking trash." [Id. at 12-14]. Once they got on the elevator, Plaintiff "was just thinking in [his] head about what Peterson was saying. It was just getting under [Plaintiff's] skin." [Id. at 13]. They rode the elevator one or two floors. [Id. at 15]. As the elevator doors opened, Plaintiff spat on Defendant Peterson's face and Defendant Peterson pushed Plaintiff out of the elevator into the hallway. [Id. at 15-16; Doc. 32 at ¶ 5: Pettis Dec.; Doc. 32 at 23]. Defendant Smith was present in the hallway when the elevator door opened. [Doc. 22-3 at 15]. Defendant Jones threw Plaintiff to the ground.[4] [Doc. 22-3 at 16]. After Defendant Jones punched Plaintiff in the face a couple of times, Plaintiff "balled up on the ground to try to evade his punches." [Doc. 22-3 at 16-17; Doc. 32 at ¶ 9]. Jones then punched Plaintiff in the body and in the back of the head, "just punching [Plaintiff] continuously" for approximately 25 seconds. [Id. at 16-19; Doc. 32 at 23]. Eventually, Defendant Simpson said, "He had enough. That's enough," and pulled Jones off the Plaintiff. [Id. at 17]. As Defendant Jones tried to break free of Defendant Simpson, Defendant Smith stepped between Defendant Jones and the Plaintiff, and pushed Jones further down the hallway.[5] [Id.; see Doc. 32 at ¶ 6]. Defendant Peterson "just stood there, watching." [Id. at 18]. Plaintiff did not resist, threaten, or kick the Defendants at any time. [Doc. 32 at ¶¶ 8, 13]. After the incident, Plaintiff was seen by medical. The nurse reported that Plaintiff

---

[4] In Plaintiff's Declaration, he attests that Defendants Simpson and Peterson also punched the Plaintiff at this time. [Doc. 32 at ¶¶ 5, 10; see also Doc. 32 at 23, 30, 33]. Plaintiff, however, made no such allegation in his Complaint, and there is, therefore, no Fourteenth Amendment excessive force claim currently pending against Defendants Simpson or Peterson. [See Doc. 1, Doc. 9 at 4, 6]. If this matter proceeds to trial, Plaintiff may at the appropriate time move to conform the pleadings to the evidence pursuant to Federal Rule of Civil Procedure 15(b).

[5] In his Affidavit, Plaintiff attests that Defendant Jones pushed Defendant Smith out of the way and continued to assault the Plaintiff. [Doc. 32 at 2 (¶ 6)]. The Use of Force Report, which was prepared in part from review of the video footage of the incident, reflects that Defendant Simpson pulled Jones off the Plaintiff after Jones had pushed Smith out of the way and that Defendant Peterson then lifted the Plaintiff to his feet. [Id. at 23].

6

"ha[d] swelling to right side of the head," but that "no distress" was noted. [Id. at 20]. Plaintiff also had two black eyes. [Id.]. Plaintiff was given an ice pack for swelling, but he received no further medical treatment for his injuries. [Id. at 21-22]. Plaintiff, however, did see a "mental health nurse after the fact for mental anguish." [Id. at 22].

## IV. DISCUSSION

The Fourteenth Amendment "protects a pretrial detainee from the use of excessive force that amounts to punishment." Graham v. Connor, 490 U.S. 386, 395 n.10 (1989). To state an excessive force claim, a pretrial detainee must show only that the force "purposely or knowingly used against him was objectively unreasonable." Kingsley v. Hendrickson, 576 U.S. 389 (2015). The standard for assessing a pretrial detainee's excessive force claim is "solely an objective one." Id. In determining whether the force was objectively unreasonable, a court considers the evidence "from the perspective of a reasonable officer on the scene, including what the officer knew at the time, not with the 20/20 vision of hindsight." Id. (citing Graham, 490 U.S. at 396).

A pretrial detainee's failure to protect claim constitutes a due process claim under the Fourteenth Amendment. Farmer v. Brennan, 511 U.S. 825 (1994); Brown v. Harris, 240 F.3d 383, 388-90 (4th Cir. 2001) (applying Farmer to a pretrial detainee's failure to protect and medical claims). A pretrial detainee states a Fourteenth Amendment claim for deliberate indifference to a serious risk of harm on the "purely objective basis that the 'governmental action' they challenge is not 'rationally related to a legitimate governmental purpose' or is 'excessive in relation to that purpose.'" Short v. Hartman, 87 F.4th 593, 611 (4th Cir. 2023) (quoting Kingsley, 576 U.S. at 398). "Now, it is sufficient that the plaintiff show that the defendant's action or inaction was in Kingsley's words, 'objectively unreasonable,' …. [T]hat is, the plaintiff must show that the defendant should have known of that condition and that risk, and acted accordingly." Id. at 611

(internal citation omitted); see Hammock v. Andoh, No. 22-7159, 2024 WL 33694, at *1 (4th Cir. Jan. 3, 2024) (In Short, the Fourth Circuit "held that a pretrial detainee's failure-to-protect claim must be evaluated under an entirely objective standard.").

Suits against an officer in his official capacity "generally represent only another way of pleading an action against an entity of which an officer is an agent." Kentucky v. Graham, 473 U.S. 159, 165, 105 S.Ct. 3099 (1985) (1985) (quoting Monell v Dep't of Soc. Servs. of the City of New York, 436 U.S. 658, 690 n. 55, 98 S.Ct. 2018, 2035 (1978)). The Office of Sheriff is not liable under § 1983 for an employee's acts "unless action pursuant to official municipal policy of some nature caused [the] constitutional tort." Collins v. City of Harker Heights, 503 U.S. 115, 120-21, 112 S.Ct. 1061, 1066 (quoting Monell, 436 U.S. at 691, 98 S.Ct. at 2036). That is, "[f]or a governmental entity to be liable under section 1983, the official policy must be the moving force of the constitutional violation." Moore v. City of Creedmoor, 345 N.C. 356, 366, 481 S.E.2d 14, 21 (1997) (internal quotation marks and citations omitted). "Thus, the entity's 'policy or custom' must have played a part in the violation of federal law." Id. (quoting Monell, 436 U.S. 658, 694, 98 S.Ct. at 2037-38).

Here, a reasonable juror may conclude from the forecast of evidence that the amount of force used by Defendant Jones was unobjectively unreasonable and, therefore, violated the Fourteenth Amendment. A reasonable juror might also conclude from the forecast of evidence that Defendants Smith, Peterson, and Simpson failed to protect Plaintiff from harm in violation of the Fourteenth Amendment. That is, the forecast of evidence shows that Defendant Jones repeatedly punched Plaintiff all over his body for approximately 25 seconds before Defendant Simpson told Jones that Plaintiff had "had enough," that Defendant Smith intervened only immediately before or after Defendant Simpson pulled Jones off the Plaintiff, and that Defendant

Peterson merely stood by and watched. A reasonable juror might conclude that such inaction by these Defendants was objectively unreasonable in light of the alleged risk of harm that played out before their eyes. As such the Court will deny Defendants' motion.

Moreover, although at the time of the use of force the standard may have been subjective, see Moss v. Harwood, 19 F.4th 614, n.4 (4th Cir. 2021), the forecast of evidence here shows that Defendant Jones' use of force was subjectively and objectively unreasonable and that Defendants Smith and Simpson were aware of the alleged risk of harm to Plaintiff for a sufficient period to intervene before they did so and that Defendant Peterson failed to intervene at all. While Defendants Smith, Simpson, and Peterson may have been unable to protect Plaintiff from the initial blows by Defendant Jones, the constitutional right of Plaintiff to be protected from further harm by Jones where Defendants Smith, Peterson, and Simpson had actual knowledge of the harm was clearly established. As such, the Court cannot find that qualified immunity applies to bar Plaintiff's claims. See E.W. ex rel. T.W. v. Dolgos, 884 F.3d 172, 178 (4th Cir. 2018).

The Court, however, will dismiss the claim against Defendant McFadden because there is no forecast of evidence from which a reasonable juror could conclude that any Defendant acted pursuant to any formal or informal policy condoning the use of excessive force against detainees at the Jail.

## V. CONCLUSION

For the reasons stated herein, the Court will deny the motion for summary judgment as to Defendants Jones, Peterson, Simpson, and Smith and grant the motion as to Defendant McFadden. An Order regarding the conduct of a judicially mediated settlement conference in this matter will be forthcoming.

# **O R D E R**

**IT IS, THEREFORE, ORDERED** that the Defendants' Motion for Summary Judgment [Doc. 21] is **DENIED in part** as to Defendants Jones, Peterson, Simpson, and Smith and **GRANTED in part** as to Defendant McFadden.

**IT IS FURTHER ORDERED** that Defendant McFadden is hereby **DISMISSED** as a Defendant in this matter.

**IT IS SO ORDERED**.

Signed: March 25, 2025

Max O. Cogburn Jr.
United States District Judge